IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| LUTHER SIEGFRIED, JR. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 02-2951 |
| | : | |
| v. | : | |
| | : | (JUDGE BAYLSON) |
| LEHIGH VALLEY DAIRIES, INC. | : | |
| | : | |
| Defendant. | : | |

_____:

_____

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR
SUMMARY JUDGMENT ON ALL PLAINTIFF'S CLAIMS**

_____

**I.   INTRODUCTION**

Consistent with the Court's Pretrial and Trial Procedures – Civil Cases, Defendant, Lehigh Valley Dairies, Inc. ("Lehigh" or "Defendant"), hereby submits this brief in reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment on all Plaintiff's Claims.  Because Plaintiff's opposition brief contains a number of factual and legal misstatements, this brief reply is necessary.

**II.   SUMMARY OF ARGUMENT**

In its opening brief, Lehigh argued that it is entitled to summary judgment because, as a threshold matter, Plaintiff is not "disabled" under the Americans with Disabilities Act ("ADA") or the Pennsylvania Human relations Act ("PHRA").  In support of its argument, Lehigh relied upon Plaintiff's own testimony, together with other witness testimony and undisputed documentary evidence, all of

1

which conclusively establishes that he is not substantially limited in any major life activities. In his opposition brief, Plaintiff alleges that he is substantially limited in the major life activities of "performing manual tasks", bending, and working. In support of his argument that he is disabled, however, Plaintiff relies on the report of his treating physician, previously identified as Plaintiff's medical "expert". The statements set forth in Plaintiff's "expert" report regarding his medical condition are belied by his own testimony regarding his physical capabilities as well as the opinion reached by Defendant's expert upon physical examination of Plaintiff and review of his medical history. Those points bear mentioning here.

Moreover, for the first time in the over two (2) years since the Complaint was filed in this case, Plaintiff argues, in the alternative, that Defendant either regarded him as disabled or that he is protected under the ADA due to his record of impairment. Not only has Plaintiff waived both of these arguments by failing to raise them before now, but also Plaintiff's arguments fall woefully short of meeting the requirements for either alternative prong of the definition of "disability" under the ADA.

Further, in his opposition brief, Plaintiff argues that a genuine issue of material fact exists regarding whether Plaintiff was allegedly "harassed" due to his light duty status, which he, without any legal support, equates with a "disability" under the ADA. As set forth below, and in Defendant's opening brief, light duty status *per se* is not a disability under the ADA. Moreover, Plaintiff's own testimony established that he was not allegedly "picked on" for this reason in any event. His claim fails on this basis as well.

Finally, Plaintiff's own testimony establishes that he cannot meet his burden of proving that his "harassment" allegations, assuming they are true, rise to the level of severity and pervasiveness required by controlling law. Moreover, the evidence establishes each time Plaintiff complained about an

alleged incident, the Company responded immediately. The Company could not have done more to investigate and respond to Plaintiff's allegations in a prompt and neutral manner. These facts present a paradigm of the "reasonable efforts" the Supreme Court sought to encourage when it established the affirmative defense under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Accordingly, Defendant is entitled to summary judgment on this basis as well. All of these arguments are set forth fully below.

### III.    ARGUMENT

#### A.    Plaintiff Is Not "Disabled" Under The ADA.

As a threshold matter, the evidence and testimony in this case establishes conclusively that Plaintiff is not disabled under the ADA. As he cannot meet this basic requirement necessary to prove his case, Defendant is entitled to summary judgment on this basis.[1]

##### 1.    Plaintiff Is Not Substantially Limited In The Major Life Activity Of Bending.

First, Plaintiff is not substantially limited in the major life activity of "bending". "Having a problem" while bending forward, as he claims, does not present the level of limitation required by the ADA. *See Popko v. The Pennsylvania State University*, 994 F. Supp. 293 (E.D. Pa 1998); *see also Horth v. General Dynamics*, 960 F. Supp. 873, 878 (M.D. Pa. 1997) (holding that even though plaintiff could not sit for more than two (2) hours, walked with a limp, and had a 20-pound lifting restriction, his restrictions were comparatively moderate, and therefore, he was

---

[1] Plaintiff does not argue in his opposition brief that he is substantially limited in the major life activity of "lifting" in response to Defendant's argument on that point in its opening brief. It is Defendant's position that, as a result, Plaintiff has conceded that he is not substantially limited in the major life activity of lifting.

not disabled within the meaning of the ADA); *Whitfield v. Pathmark, Inc.*, 971 F. Supp. 851, 853-58 (D. De. 1997) (granting summary judgment, holding injuries restricting lifting, "repeated reaching, bending, stooping, driving, riding in a car or playing sports," fell on the common place as opposed to the "severe").

Indeed, bending restrictions that are work related, as well as other restrictions on walking, sitting, pushing and pulling, are rarely severe enough to rise to the level of being a "disability" as a matter of law. *Chandler v. American Eagle Airlines*, 251 F. Supp. 1173 (E.D. N.Y. 2003). Plaintiff's testimony that he has trouble bending over is insufficient as a matter of law to establish that he is substantially limited in the major life activity of bending. Therefore, summary judgment is proper.

### 2. Plaintiff Is Not Substantially Limited in Performing Manual Tasks.

In his brief, Plaintiff alternatively argues that he is substantially limited in the major life activity of "performing manual tasks". (Pl. Br. at 20-21). This argument must be rejected under the Supreme Court's decision in *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002). The *Williams* Court made clear that "terms [such as "substantially limits" and "major life activities"] need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.*; *see also Fallon v. John Ashcroft*, C.A. No. 00-5258 2002 U.S. Dist. LEXIS 12202 (E.D. Pa. January 25, 2002), *aff'd,* 2003 U.S. App. LEXIS 8277 (3d Cir. April 30, 2003). The inquiry focuses on whether the impairment places "*severe* restrictions in the activities that are of *central* importance to most people's daily lives." *Id.* (emphasis added). There has been no such evidence presented here.

In support of this argument, Plaintiff relies on the report of Dr. Richard Ruth, his treating physician, who stated in his report, prepared for the purposes of litigation, that Plaintiff is restricted from

4

bending, lifting, walking (at all), and standing for more than a few minutes. (*See* Pl. Br. at Exhibit 134). The statements made in this report are belied by Plaintiff's own testimony regarding his very substantial physical capabilities. Indeed, contrary to Dr. Ruth's report, Plaintiff testified conclusively that he can (and has) engaged in the following activities:

- assisting with the housework and yard work;
- dressing himself;
- combing his own hair;
- showering himself;
- hunting and fishing;
- square dancing with his wife;
- assisting with carrying "light" grocery bags;
- fast walking;
- bowling;
- driving;
- using the riding mower to mow his lawn;
- vacationing;
- walking; and
- reaching.

5

(Seigfried at 240-41, 338, 339, 341, 342, 344-47, 352, 359, 360).[2] Indeed, Plaintiff admits that, despite his 1987 back injury, he has never missed a day of work after his initial leave of absence. (Seigfried at 102, 302). The bottom line is that Plaintiff may have had to make minor adjustments in the manner in which he performs some of these activities, and limit the frequency of others. (Seigfried at 345-47, 359). However, as established above, these minor adjustments do not demonstrate a "substantial limitation" as compared to the general population.

Defendant's expert opinion is <u>consistent</u> with Plaintiff's testimony. Specifically, Dr. Ronald Krasnick found that Plaintiff "is in no way totally disabled" and that he presents with objective evidence of no more than a "mild lumbosacral strain". *See* Exhibit A attached hereto. As Plaintiff's expert report contains opinions that are directly contrary to Plaintiff's own testimony regarding his physical capabilities, it should be disregarded in its entirety. Taking Plaintiff's own testimony as true regarding his physical capabilities, as supported by the conclusions of Dr. Krasnick, Plaintiff is not substantially limited in the performance of those tasks central to most people's daily lives. Therefore, Plaintiff is not disabled under the ADA for this reason as well.

### 3. Plaintiff Is Not Substantially Limited In The Major Life Activity Of Working.

For the first time in this over two year-old litigation, Plaintiff alleges that he is substantially limited in the major life activity of "working." (Pl. Br. at 21). Plaintiff offered absolutely no testimony or legal authority in support of this argument. This argument, therefore, must fail. Lehigh's decision to create and modify Plaintiff's position to exclude heavy lifting, among other minor things, does

---

[2] The deposition transcripts of the witness testimony cited in this Reply Brief are attached to Defendant's Opening Brief as Appendix Exhibit A.

not operate as a substantial limitation on Plaintiff's ability to work. *Howell v. Sam's Club,* 959 F. Supp. 260, 266 n. 10 (E.D. Pa. 1997).

The United States Supreme Court has held that an employer's establishment of physical criteria for the performance of a job does not by itself establish a claim that under the ADA that an employee who does not meet those criteria is substantially limited in the major life activity of working:

> By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity. Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job.

*Sutton v. United Airlines,* 527 U.S. 471, 491-92 (1999) (emphasis in original). *Sutton* went on to require that plaintiffs must, in order to establish that they are "substantially limited," "allege that they are unable to work in a broad class of jobs." *Id.* Plaintiff has made no such allegation and, in fact, the record evidence is quite to the contrary.

Indeed, Plaintiff failed to demonstrate how his moderate lifting restriction substantially limits his ability to engage in the major life activity of working, which includes his inability to work in a broad class of jobs. In fact, Plaintiff has not adduced any evidence whatsoever throughout the course of discovery in support of this claim. To the contrary, the evidence clearly establishes that Plaintiff has been continuously employed at Lehigh in a number of jobs since 1979, with the exception of one layoff

7

and his workers' compensation leave of absence in 1987. (Seigfried at 102, 302). Accordingly, because Plaintiff has failed to demonstrate his inability to work in a broad class of jobs, summary judgment is appropriate on this basis as well.

### 4. Lehigh Did Not Regard Plaintiff As Disabled.

Plaintiff does not have a "record" of being disabled, nor has Lehigh regarded Plaintiff as "disabled" under the second and third prong of the ADA's definition of "disability". (Pl. Br. at 22).[3] First, it is well settled that simply because an employer is aware of an employee's physical impairment does not demonstrate that the employer regarded the employee as a "disabled" individual under the ADA. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Sharkey v. Federal Express*, C.A. No. 98-3351 2001 U.S. Dist. LEXIS 72 (E.D. Pa. January 9, 2001); *Popko v. Pennsylvania State Univ.*, 994 F. Supp. 293 (M.D. Pa. 1998). To meet the burden of proof, a plaintiff must establish that the employer perceived that he not only suffered from a physical impairment, but that the perceived impairment substantially limited his ability to work. *Sarko v. Penn Del Directory Co.*, 968 F. Supp. 1026, 1035 (E.D. Pa. 1997). The fact that Lehigh provided Plaintiff with a light duty position is insufficient to establish that he was regarded as disabled within the meaning of the ADA. *Horth v. General Dynamics*, 960 F. Supp. 873, 878 (M.D. Pa. 1997).

In the *Sharkey* case, for example, the plaintiff had permanent working restrictions, including a heavy lifting restriction, that precluded him from performing the job of courier. The *Sharkey* Court granted summary judgment in favor of Federal Express ruling that simply because the employer

---

3   By failing to raise these alternative allegations until this late stage of the litigation, it is Defendant's position that they are waived. Defendant is addressing the substance of the allegations in any event.

8

regarded the plaintiff as unable to perform certain job functions, the plaintiff presented no evidence that the employer regarded him as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . " *Id.* at *21-22 (citing 29 C.F.R. 1630.2(j)(3)(I).

Moreover, in the *Popko* case, the plaintiff alleged, among other things, that the defendants regarded her as disabled because it provided her with accommodations, including permanent day work, to accommodate her injured arm and sleep related disorder. The Court rejected this argument, finding summarily that the defendants' decision to accommodate the plaintiff's working restriction did not provide evidence that they regarded her disabled as a matter of law. 994 F. Supp. at 300. The same result is appropriate here.

Here, Plaintiff was not precluded from doing his job because of his alleged impairments. In fact, he has been continuously employed in jobs consistent with his work-related medical restrictions since 1988. (Seigfried at 102, 302). Like the plaintiff in *Popko*, Lehigh's accommodation of Plaintiff's medical restriction does not establish that it regarded him as disabled. *See id.* at 300. In short, Plaintiff has failed to adduce any evidence whatsoever that Lehigh perceived that he was substantially limited in his ability to work. He was not, since he has remained virtually continuously employed at Lehigh for the past 24 years. Therefore, Plaintiff has failed to prove that Lehigh regarded Plaintiff as "disabled". Defendant is entitled to summary judgment on this basis as well.

### 5. Plaintiff Does Not Have A Record Of Impairment.

Plaintiff also has failed to establish that Lehigh believed that he had a "record of impairment" within the meaning of the ADA's definition of disability. To do so, a plaintiff must demonstrate that he has "a history of, or [be] mis-classified as having, a mental or physical impairment

9

that substantially limits one or more major life activity." *Sharkey*, 2001 U.S. Dist. LEXIS at 21 (citing 29 C.F.R. 1630.2 (K)); *Popko* 994 F. Supp. at 299. Lehigh is entitled to summary judgment on this point as well because Plaintiff's alleged "record of impairment does not demonstrate a substantial limitation in major life activities." *Id.*; *Howell*, 959 F. Supp. at 268. Indeed, physical condition does not automatically constitute an impairment simply because it is documented by medical study, treated by a doctor, or capable of being medically treated. *Id.*

As set forth above, based on Plaintiff's own admissions, Plaintiff's medical history does not establish that he has a record of an impairment that results in a substantial limitation on any major life activity. His doctor's reports over the years support Defendant's position. Specifically, Plaintiff's work-related medical restrictions from the time he returned to work in 1990 to 2001 are relatively unremarkable. Indeed, the Physical Capabilities Checklist submitted by Dr. Ruth in 1990 establishes that Plaintiff's physical limitations were, and still are, extremely limited. They included very minor sitting, standing and bending restrictions as well as a lifting restriction of 50 pounds maximum to below his shoulder. (Seigfried at 149-50 and Seigfried 7).

Over the years, on occasion, Plaintiff's treating physician modified his restrictions by imposing a brief driving and overtime restriction, for example. (Seigfried at 153-56 and Seigfried 9). In 2001, those restrictions were abandoned. (Seigfried at 158-60 and Seigfried 11). Since May, 2001, Plaintiff's work-related medical restrictions have not been modified. Certainly, as a matter of law, these rather inconsequential work-related medical restrictions fall far short of establishing a record of an impairment that substantially limits any one of Plaintiff's major life activities. *See Howell*, 959 F. Supp. at 268.

In light of Plaintiff's own testimony as well as the nature of the work-related medical restrictions submitted by his doctor over the years, Plaintiff cannot establish that he has a "record of impairment" sufficient to constitute a disability within the meaning of the ADA. Therefore, summary judgment on this basis is proper.

**B.     Plaintiff Has Failed To Prove That Any Alleged Harassment Was Due To Any Alleged Disability.**

There can be no question given the testimony and evidence in this case that Plaintiff cannot meet his burden of proving that any alleged "harassment" was due to any "disability". Again, it is well settled that light-duty status, in and of itself, is not a disability under the ADA, and therefore cannot provide the basis for a disability harassment claim.[4] Even assuming that it is for the purposes of this argument, however, the substantial evidence and testimony in this case (including Plaintiff's own admissions) establish that Plaintiff was not singled out for this reason or any unlawful reason. The conduct at issue here was, and has been for many years, directed to employees on light duty and full duty alike.

Plaintiff's theory on the cause of the alleged harassment varied over the course of his deposition testimony. None of his theories, however, come close to constituting a "protected basis" under the ADA. First, Plaintiff testified conclusively that he believes that he was subjected to "harassment" by his co-workers in 2001 because he was negotiating a new job with the Company, not

---

4   Plaintiff essentially attempts to argue "semantics" here stating that "[w]hether Seigfried actually used the terminology that he believed he was harassed because of his disability as opposed to his light duty status is irrelevant". (Pl. at 23). To the contrary, as an essential element of his claim, Plaintiff must prove that he was harassed due to his disability. His own admissions establish that he was not. (Seigfried at 166, 176, 208, 318, 327-28).

11

because of his light-duty status. (Seigfried at 220). This testimony contradicts Plaintiff's allegations that he was being picked on because of any reason close to constituting a "protected status."

Second, Plaintiff's testimony that he was "picked on" because of his light-duty status is further undermined by the fact that Plaintiff admitted that full-duty employees were subjected to the same sort of conduct over the years, as well that the fact that other light-duty employees had never been picked on. (Seigfried at 141-42; 223; Bivinghouse at 75; 119; Hendrix at 96, Kett at 89). Based on Plaintiff's own admissions, no reasonable juror could infer that Plaintiff was being singled out because of his "light-duty" status. Therefore, Defendant is entitled to summary judgment on this basis.

### C. The Allegations In The Complaint Are Not Severe Or Pervasive As A Matter Of Law.

Again, it is clear here that even taking all of Plaintiff's allegations as true only three (3) to four (4) minor incidents arguably related to his light duty status occurred (even if that status was protected by law) over a discrete nine (9) month period. These incidents are insufficient as a matter of law to establish the requisite severity or pervasiveness. Here, there is no testimony or evidence alleging that any of the conduct at issue involved physical touching or threats. What we have here, taking Plaintiff's testimony as true, is simply a few jokes and/or pranks played on Plaintiff (and others) over a limited period of time. Moreover, most if not all of Plaintiff's allegations are based on his unsubstantiated and uncorroborated subjective beliefs or hearsay, which can not form the basis for denying a motion for summary judgment. *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378 (3d Cir. 1999); *Adefumi v. City of Philadelphia*, C.A. No. 01-5565 2003 U.S. Dist. LEXIS 12550 (E. D. Pa. July 17, 2003)

Even assuming that Plaintiff's testimony is true and that he can prove causation (which Defendant denies), Plaintiff's own testimony demonstrates that none of the alleged conduct had the effect of altering the terms and conditions of his employment. His claim, therefore, fails on this basis as well. In fact, during his entire employment history at the Company, Plaintiff has been treated fairly and in many cases more favorably than any other employee. (Seigfried at 79, 91-96). Further, Plaintiff never missed any work related to the allegations in the Complaint. (Seigfried at 302). He has never been disciplined related to the allegations in the Complaint. (Seigfried at 50, 58). He continues to receive contractual pay increases; his seniority is unaffected; and his job duties and responsibilities have not been affected negatively in any way. (Seigfried at 58-59). He is well liked by his supervisors and generally does a good job. (Bivinghouse at 54, 142; Heath at 100, 132).

In sum, no reasonable jury could find that the incidents alleged were so severe or pervasive to alter the terms and condition of Plaintiff's employment. In fact, the evidence establishes that not only did all these alleged incidents occur within a nine (9) month period (out of Plaintiff's 24 years of employment), but that Plaintiff was treated more favorably than any other employee during his entire employment history at the Company, including over this nine (9) month period in 2001. He has lost no time from work, nor has he suffered any adverse employment action whatsoever as a result of the allegations in the Complaint. Clearly, Defendant is entitled to summary judgment on this basis as well.

D.     **Defendant Took Adequate Remedial Action As A Matter of Law.**

The Company's evidence proves that it took appropriate remedial measures designed to end any alleged harassment in response to all of Plaintiff's complaints. Indeed, the Company could not have done more to investigate and respond to Plaintiff's allegations in a prompt and neutral manner.

13

These facts present a paradigm of the "reasonable efforts" the Supreme Court sought to encourage when it established the affirmative defense under *Ellerth*, 524 U.S. at 765.

Specifically, each time Plaintiff reported an "incident," the Company responded. (Seigfried at 178; Bivinghouse at 91). What made the situation so difficult was that no one, including Plaintiff, was able to identify the individual(s) responsible for the conduct about which he complained (other than the Eric Rohrbach "work order" incident). (Seigfried at 178; Heath at 131).[5] But it was not for lack of diligence on the Company's part. (Seigfried at 213, 247-49; Bivinghouse at 55-56; Heath at 30-31). Both prior to and throughout the relevant time period the Company consistently reinforced its Non-Harassment Policy. Moreover, management conducted investigations into each one of Plaintiff's complaints. (Seigfried at 178; Bivinghouse at 91). Management also repeatedly met with the Maintenance employees, in individual and group settings, even though there was no proof regarding who had engaged in any of the alleged jokes or pranks. (Seigfried at 299-300; Kett at 118; Macri at 52-56, 62-63, 69-71 and Macri 4; Fogarty at 48, 66-67 and Fogarty 2). Without proof of the individual(s) responsible, however, the Company could not fairly discipline any particular employee.

Even so, throughout 2001, the Company took action to address Plaintiff's complaints swiftly and effectively. The Company held a meeting in September, 2001 with the Maintenance Department that effectively ended the alleged harassment. (Seigfried at 239, 291, 295, 324-25). The Company's actions in ending the alleged harassment clearly constitute adequate remedial action as a

---

5  Plaintiff argues that Mr. Rohrbach had been disciplined in 1983 and 1989 (almost 15 years ago), contrary to Lehigh's assertion in its brief that he had not been disciplined in the past. Mr. Rorhbach had not been disciplined in his entire employment history for any alleged harassment prior to or since that time. He did receive

SL1 374668v1/24659.004

matter of law. *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir. 1997). Because the evidence establishes that Defendant took prompt, appropriate action reasonably calculated to end the "harassment" throughout the relevant time period, Defendant is entitled to summary judgment on this basis as well.

IV. **CONCLUSION**

For the reasons set forth above and in its opening brief, Defendant respectfully requests that this Court grant summary judgment in favor of Defendant on all Plaintiff's claims under Fed. R. Civ. P. 56.

Respectfully submitted,

_____
Michael G. Tierce (Pa. I.D. No. 49896)
Lisa M. Scidurlo (Pa. I.D. No. 80487)
Attorneys for Defendant, Lehigh Valley Dairies, Inc.
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 575-0100

Dated: August 13, 2003.

---

a written warning consistent with the terms of the labor contract for forging Mr. Heath's initials on a work order. (Seigfried at 175; Kett at 128; Bivinghouse at 152, 169-70 and Bivinghouse 1; Macri at 36-37).

15

**CERTIFICATE OF SERVICE**

I, Lisa M. Scidurlo, hereby certify that on this 13th day of August, 2003 I served a true and correct copy of the foregoing Defendant's Reply Brief in Support of its Motion for Summary Judgment on all Plaintiff's Claims upon Plaintiff's counsel *via* first-class mail, postage prepaid, addressed as follows:

> Scott M. Pollins, Esquire
> 1620 Schoolhouse Lane
> Lower Gwyned, PA 19002

_____
Lisa M. Scidurlo