IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUTHER B. SIEGFRIED, JR. | : | CIVIL ACTION NO. 02-CV-2951 |
| Plaintiff | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| LEHIGH VALLEY DAIRIES, INC. | : | (JUDGE MICHAEL M. BAYLSON) |
| Defendant | | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
STATEMENT OF UNDISPUTED FACTS**

Plaintiff, Luther B. Siegfreid, Jr. ("Siegfried"), responds to Defendant's Statement of Undisputed Facts in accordance with the numbering thereof.

**I.    THE WITNESSES**

1. Admitted.

2. Admitted.

3. Admitted.  By way of further response, Siegfried also reports to Ron Bivighouse.  (Siegfried deposition transcript at 91-92 – attached as Exhibit 1 to Plaintiff's Response to Defendant's Summary Judgment Motion and attached in its entirety to Defendant's Motion for Summary Judgment).

4. Admitted.

5. Admitted.

6. Admitted except that Mr. Hendricks' last name is misspelled.

7. Admitted.

**II.     PLAINTIFF'S EMPLOYMENT HISTORY**

8. Denied. Siegfried was laid off for a period of time in approximately the early 1990's. (Siegfried deposition transcript (Exhibit 1) at 8, 21-22, 27).

9. Admitted.

10. Admitted. By way of further response, Defendant maintains a Code of Business Conduct (Exhibit 18 to Plaintiff's Response to Defendant's Summary Judgment Motion) which governs Siegfried's employment. Defendant also maintains policies and procedures on harassment (Exhibit 15) and safety rules (Exhibit 19).

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted without the underlined emphasis.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. It is admitted that by adding the relief responsibility at the treatment plant, Siegfried's seniority was unaffected. Siegfried did not testify that he received a pay increase. (Siegfried deposition transcript (Exhibit 1) at 26).

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted that Siegfried alleges that in January 2001 several of his maintenance department union co-workers filed a grievance to revoke his seniority and regarding his vacation picks. (Siegfried deposition transcript (Exhibit 1) at 38-39). There was another grievance filed several months later in which Siegfried's maintenance department union co-workers argued that light duty employees should be separate from maintenance department union workers. (Siegfried deposition transcript (Exhibit 1) at 315-316).

25. Admitted.

26. Admitted.

27. Admitted that Siegfried was unaffected by the grievance that was filed in January 2001 regarding his vacation picks and seniority. The other grievance filed several months thereafter started the process of Siegfried being removed from the treatment plant. (Ron Bivighouse deposition transcript (Exhibit 20) at 53).

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted except that the characterization of Siegfried's list as "demands" is a term used by Defendant and its counsel, not Siegfried.

32. Admitted except that Siegfried never testified that he has the ability to set his own start times. (Siegfried deposition transcript (Exhibit 1) at 181).

33. Admitted except that the page number for Siegfried's deposition transcript should be 183, not 65.

34. Admitted.

35. Admitted except that the characterization of Siegfried's list as "demands" is a term used by Defendant and its counsel, not Siegfried.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted that Siegfried receives pay increases pursuant to the union contract and that his seniority has not been affected. Denied that Siegfried's job duties and responsibilities have not been affected negatively in any way. On the contrary, Siegfried repeatedly complained about disability-based harassment that resulted in a hostile work environment.

42. Denied. This is not a statement of fact. It is the opinion of Defendant's counsel.

43. Denied that Siegfried is a content and happy employee. Siegfried is satisfied with his job. (Siegfried deposition transcript (Exhibit 1) at 35). Siegfried testified that his current job situation has improved quite a bit and that he always liked his job.

### III. THE COMPANY'S POLICY PROHIBITING HARASSMENT

44. Admitted. By way of clarification, Defendant posted a one page notice on approximately December 19, 2000 from Jim Macri to all employees regarding harassment. (Exhibit 15 to Plaintiff's Response to Defendant's Summary Judgment Motion).

45. Denied. Siegfried received a copy of the above-referenced one page notice in December 2000. He did not receive the Suiza Code of Business Conduct (Exhibit 18) until some point in 2001. (Siegfried deposition transcript (Exhibit 1) at 136-137).

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

IV.   PLAINTIFF'S COMPLAINTS OF HARASSMENT

50. Admitted.

51. Denied. On the contrary, Siegfried testified that the numerous postings and incidents of harassment occurred because of his medical condition/light duty status. (Siegfried deposition transcript (Exhibit 1) at 166, 176, 208, 318, 327-328). Additionally, there are numerous written documents Siegfried testified to that demonstrate that the harassers' motivation was based on Siegfried's disability. (Exhibits 28, 31, 32, 34, 38, 39, 40).

52. Denied. Siegfried testified that Jim Moyer had a bad back and the maintenance workers would load up his 55 gallon trash can with water knowing that he had a bad back. (Siegfried deposition transcript (Exhibit 1) at 73).

53. Denied. Siegfried did not testify that there is a long-standing tradition of jokes and pranks in the maintenance department. (Siegfried deposition transcript (Exhibit 1) at 72).

54. Admitted except that Siegfried "repeatedly" complained about harassment, he did not complain "on occasion".

55. Denied. On more than one occasion Bivighouse instructed Siegfried to investigate his complaints himself. (Siegfried deposition transcript (Exhibit 1) at 332-334).

56. Admitted.

57. Denied. Siegfried's testified that when he complained to Diane Kett that she would have Bivighouse look into it. Siegfried does not know if Bivighouse actually did look into his numerous complaints and he believes that Bivighouse knew who was responsible for the harassment. (Siegfried deposition transcript (Exhibit 1) at 178-179).

58. Admitted.

59. Admitted.

60. Denied. Jim Heath's explanation for changing Siegfried's start time did not make sense to him and he believed it was the start of a lot of things that subsequently occurred. (Siegfried deposition transcript (Exhibit 1) at 122-123). The final three (3) sentences of Paragraph 60 are admitted.

61. Admitted that Heath testified that he held a series of meetings with the maintenance employees and that he told the maintenance employees that if the company determined that any one of them had committed an act of harassment, they would be immediately terminated whether they had 40 years or 4 years with the company. (Heath deposition transcript (Exhibit 9) at 51).

62. Admitted.

63. Admitted.

64. Admitted.

65. Admitted.

66. Admitted.

67. Admitted.

68. Denied.  Kett testified that she does not remember how the company responded to this complaint.  She "thinks" Bivighouse investigated this complaint, however she cannot remember what he told her if he did investigate.  (Diane Kett deposition transcript (Exhibit 17) at 144-145).

69. Denied.  On April 10, 2001, Seigfried discovered that someone had urinated in his one of poly buckets.  (Siegfried's daily log for April 10, 2001 attached as Exhibit 33 to Plaintiff's Response to Defendant's Motion for Summary Judgment).  Siegfried kept daily logs of any incidents of harassment.  (Siegfried deposition transcript (Exhibit 1) at 376-378).  Siegfried told Mickey Qawasmy (Jim Macri's assistant at the time, currently Defendant's MIS Coordinator) and Pat Pawlak (Diane Kett's assistant).  (Siegfried's daily log for April 10, 2001 attached as Exhibit 33 to Plaintiff's Response to Defendant's Motion for Summary Judgment).

70. Admitted.

71. Admitted.

72. Admitted.

73. Admitted.

74. Admitted.  By way of further response, at first Eric Rohrbach denied it was his handwriting.  (Diane Kett deposition transcript (Exhibit 17) at 129).  Rohrbach

7

came back about an hour later and admitted to changing and forging the note. (Ron Bivighouse deposition transcript (Exhibit 20) at 166).

      75. Admitted. By way of further response, contrary to what Ron Bivighouse had told Siegfried and contrary to what Heath had previously told the maintenance department several months prior regarding discipline for harassment, Bivighouse simply issued Rohrbach a written warning. (Siegfried deposition transcript (Exhibit 1) at 175 and Heath deposition transcript (Exhibit 9) at 51).

      76. Denied. Rohrbach was previously disciplined by Bivighouse in June of 1989 and he had received a department wide discipline in August 1983. (June 26, 1989 letter of warning from Bivighouse to Rohrbach and August 31, 1983 disciplinary action from Bill Peifer jointly attached as Exhibit 36).

      77. Denied. Fran Hendricks told Bivighouse that he thought Rohrbach was responsible for the harassment, but he could not prove it. (Fran Hendricks deposition transcript (Exhibit 27) at 36-37).

      78. Admitted. By way of further response, on May 14, 2001, Siegfried came into work and discovered that a packet of documents containing a letter from his doctor to Defendant, his social security number, and other documents relating to his medical restrictions were posted throughout the plant. (Siegfried deposition transcript (Exhibit 1) at 191 and packet of documents posted throughout plant attached as Exhibit 38).

      79. Admitted.

      80. Admitted. Siegfried also reported this incident to Ron Bivighouse. (Bivighouse deposition transcript (Exhibit 20) at 182).

8

81. Admitted.

82. Admitted.

83. Admitted.

84. Admitted.

85. Admitted.

86. Denied. Siegfried would not characterize having his work bucket urinated in (Siegfried's daily log for April 10, 2001 attached as Exhibit 33 and Siegfried deposition transcript (Exhibit 1) at 376-378), having the office where he worked repeatedly broken into, having his hard hat and chair urinated in (Siegfried deposition transcript (Exhibit 1) at 270-271, 273, 284-286 and Siegfried's daily log for June 15, 2001 attached as Exhibit 41) and having antiseize (a greasy lubricant) placed on his door knob (Siegfried deposition transcript (Exhibit 1) at 288) as "minor" issues.

87. Admitted.

88. Admitted.

89. Admitted.

90. Admitted.

91. Admitted.

92. Denied that Defendant conducted a full investigation into all of Siegfried's complaints. It is admitted that on only one occasion was Defendant able to identify who was responsible for the harassment against Siegfried (Eric Rorhbach forged note incident).

93. It is admitted that Defendant held occasional meetings regarding Siegfried's complaints of harassment.

94. Admitted.

95. Denied. Siegfried gave Bivighouse Exhibit 38 and told him that copies of those documents were posted throughout the plant. (Bivighouse deposition transcript (Exhibit 20) at 182). Siegfried told Bivighouse that right before Jeff (garage employee) found copies of Exhibit 38, that he saw Rohrbach walking through the department. (Siegfried deposition transcript (Exhibit 1) at 209-210. Siegfried told Bivighouse that Terri McGreevey (Lehigh Valley Dairies employee) told him that Rorhbach had given a copy of Exhibit 38 to Linda (Lehigh Valley Dairies employee), who worked with McGreevey. **Id.** at 211.

Fran Hendricks heard Glenn Kibblehouse state he did not want Siegfried in the department because he was not helping them out. (Fran Hendricks deposition transcript (Exhibit 27) at 35). Hendricks also heard Rohrbach state that he wanted Siegfried out of the maintenance department. **Id.** at 36. Hendricks told Bivighouse that he thought Rohrbach was responsible for the harassment, but he could not prove it. **Id.** at 36-37.

96. Admitted.

97. Admitted, except that Rohrbach was disciplined for forging a work order.

98. Admitted.

99. Admitted.

100. Admitted.

101. Admitted.

102. Admitted.

103. Admitted.

10

104. Denied. The allegations in Paragraph 104 are legal conclusions which cannot be fairly stated as undisputed facts. Siegfried does not know if Bivighouse actually investigated his complaints. (Siegfried deposition transcript (Exhibit 1) at 178). Additionally, Siegfried is aware of only one meeting that occurred in response to his harassment complaints, and that meeting occurred in approximately August or September 2001. **Id.** at 236-237.

105. Denied to the extent that Fran Hendricks told Bivighouse that he thought Rohrbach was responsible for the harassment, but he could not prove it. (Fran Hendricks deposition transcript (Exhibit 27) at 36-37).

106. Denied. Siegfried rarely complained to Jim Heath because he had heard from several other maintenance department employees that when other people went to Heath to complain about anything, nothing really got done. (Siegfried deposition transcript (Exhibit 1) at 110-111). The Suiza Code of Business Conduct does not require Siegfried to bring his complaints to the attention of Defendant's corporate headquarters. (Suiza Code of Business Conduct - Exhibit 18 at pages 15-17, 21-22). However, if a supervisor or manager receives a complaint, then the supervisor or manager **must immediately** pass that report along to the company's Ethics Compliance Officer who will investigate the complaint. (Exhibit 18 at page 22). Neither Kett nor Bivighouse testified that they passed any of Siegfried's complaint along to the company's Ethics Compliance Officer.

107. Admitted.

11

### V. PLAINTIFF'S MEDICAL RESTRICTIONS AND PHYSICAL ABILITIES

108. Admitted that Dr. Ruth's February 12, 1988 Physical Capabilities Checklist states the limitations Defendant identified. It is denied that this February 1988 checklist establishes whether Siegfried was disabled during the time that he was harassed in 2001. It is further denied that the physical limitations expressed in Dr. Ruth's checklist are extremely limited.

109. Admitted.

110. Admitted.

111. Admitted that Defendant has taken excerpts from Dr. Ruth's May 1, 2001 letter. The complete letter is attached as Exhibit 13 to Plaintiff's Response to Defendant's Summary Judgment Motion.

112. Admitted.

113. Admitted.

114. Admitted with the clarification that the exercises referred to in this Paragraph are exercises Siegfried does to alleviate his back pain. (Siegfried deposition transcript (Exhibit 1) at 345).

115. Denied as stated. Siegfried testified that he does not use the sweeper (vacuum) or if he does it is very little. (Siegfried deposition transcript (Exhibit 1) at 351-352). Siegfried does not take baths because he has a hard time getting out of the tub. **Id.** at 96-97. He cannot wash his back or dry his back. **Id.** at 339. He has no tie shoes because he cannot bend down to tie them. **Id.** at 97. He has trouble brushing his teeth because of when he leans forward to spit. **Id.** He has trouble sitting all the time. **Id.** at 97-98. He cannot work around the house, and he gave up gardening. **Id.** at 98. He has

trouble anytime he bends forward. **Id.** at 340. He cannot run. **Id.** at 341. He used to go square dancing 4-5 nights a week. **Id.** at 346. He has not gone dancing for a while and when he does go, it is usually once a week and at older clubs that do slow dance. **Id.** at 347. Siegfried took three brothers through little league hardball and three daughters through softball, however when his son came along he could not play any sports with him. **Id.** at 349-350. Siegfried admits that he hunts and fishes. However, he no longer archery hunts with a bow. **Id.** at 347. Siegfried admits that he can carry light grocery bags and that he can fast walk. Siegfried does not go bowling anymore. **Id.** at 345-346. If he does any mowing at all, he uses the riding mower. **Id.** at 342.

      116. Admitted.

                                      Respectfully submitted,

By: _____
      Scott M. Pollins, Esquire
      Pa. Attorney Id. No. 76334
      16 Plaza East Lancaster Avenue
      Suite 104
      Ardmore, PA 19003-2228
      (610) 896-9909

      Attorney for Plaintiff,
      Luther B. Siegfried, Jr.

Date: _____